uted by him according to instructions given to him by me," thereby vesting neither the absolute power of disposition nor the beneficial interest.

The fact that Dr. Ryder renounced as executor does not take the case out of the rule, because the power of disposition, being wholly discretionary, was not annexed to the office of executor, but was given to him as a person, and he might accept and execute it, although he failed to qualify as executor. Dunning v. Ocean Nat. Bank, 61 N. Y. 497, at page 502, 19 Am. Rep. 293. Nor is the rule inapplicable because the residuary clause did not designate the donee of such discretionary power by name. Kinnier v. Rogers, 42 N. Y. 531. Dr. Ryder, therefore, took as an individual, and as such had the absolute power of distribution of the residuary estate. He could have given it to any one to whom he saw fit, including himself. As was said in the Amherst College Case, 151 N. Y. 282, at page 323, 45 N. E. 876, at page 887, 37 L. R. A. 305:

"If * * * the matter is left wholly to his will and discretion, no secret trust is created, and he may, if he chooses, apply the legacy to his own use. When it clearly appears that no trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his own wishes, the legatee, if he has made no promise, and none has been made in his behalf, takes an absolute title, and can do what he pleases with the gift."

The fact that Dr. Ryder, as executor, made no distribution of the estate, leaves the same to vest by operation of law, by which absolute ownership thereof came to him.

The motion to dismiss the counterclaim is denied.

---

BIRD v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

1. BOUNDARIES (§ 20*)—HIGHWAYS.
    Where property abutting on an abandoned turnpike road, the title to which had reverted to the owners of the fee, was conveyed by a deed describing the northerly boundary as running along the turnpike, half of the highway passed to the grantee.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 123–130, 132; Dec. Dig. § 20.*]

2. BOUNDARIES (§ 20*)—CONSTRUCTION.
    That a deed to land abutting on a turnpike road, which was subsequently abandoned, the title reverting to the owners of the fee, contained, after the description, a diagram of the lands, not including the half of the roadway, did not show an intention to retain a reversionary interest in such roadway.
    [Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 129; Dec. Dig. § 20.*]

Appeal from Trial Term, Kings County.

Action by Marie A. Bird against the City of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of Kelley, J., in the court below:

Upon a sale for taxes under the consolidation act (section 6, tit. 8, c. 583, Laws 1888), the surplus was deposited with the treasurer of the city of Brooklyn. Subsequently the defendant paid this surplus to one Raymond, who claimed to be the owner of the property. The plaintiff says that she was the owner, and sues to recover the surplus so paid. No evidence is introduced to show the title to Raymond, to whom the money was paid; the defendant insisting that plaintiff must stand or fall on her own title.

The premises were part of the southerly half of the old Brooklyn and Jamaica turnpike. John Ryerson owned the abutting farm land and one-half of the turnpike. The turnpike company conveyed to the Brooklyn & Jamaica Railroad Company, which abandoned the road prior to 1869; the title reverting to the owners of the fee. In 1848 the heirs of John Ryerson conveyed the farm located on the south side of the turnpike road to one Burdett, who is plaintiff's grantor. The deed to Burdett bounded the farm on the turnpike road, and the northerly boundary ran "along the turnpike road," so that under the well-established rule of property the nonusable strip constituting one-half the highway passed to the grantee with the farm. Bissell v. N. Y. C. & H. R. R. R. Co., 23 N. Y. 61; In re Ladue, 118 N. Y. 213, 23 N. E. 465; Hennessy v. Murdock, 137 N. Y. 317, 33 N. E. 330; Ray v. N. Y. Bay Ex. R. R., 34 App. Div. 3, 53 N. Y. Supp. 1052.

The area of the land conveyed is not stated in the description itself; but at the end of the description by courses and distances we find the following sentence: "The following is a diagram of the said lands according to a recent survey thereof made by John Rolfe, city surveyor." Then follows a diagram, showing the farm conveyed on the south side of the turnpike, and in the center of the plot we find the words and figures, "12 A., 3 R., 13 P.," which undoubtedly indicated the area of the farm proper, and which does not include the area of the land constituting the south half of the road.

The defendant attacks the plaintiff's title, claiming that the presumption from the language of the courses, distances, and boundaries in the Ryerson deed is overcome by the diagram, and that the reference to the diagram indicates an intent on the part of the grantors to exclude the south half of the turnpike and to keep it to themselves. In my opinion, this claim is not sustainable.

1. The language of the description, which under the authorities cited, would carry the bed of the road, does not contain a statement that the area of the land conveyed is limited to the acreage of the main farm or usable land, as it has been designated in the decisions.

2. The reference to the diagram does not avoid the well-settled principle that the grantor intended to convey, not only the farm itself, but also his ownership in the highway adjacent to the farm. The diagram is a diagram of the farm proper, the land in use by the grantor, the valuable portion of the real estate. There is no reason in the assumption that the heirs of Ryerson, back in 1848, when this was unimproved farm land, intended to sell the farm and yet retain a reversionary interest in the bed of the turnpike. The proof shows that they intended to dispose of the entire property, and there is no suggestion that they at any time claimed or asserted any right or interest in the bed of the turnpike.

So far as the confirmatory deed of 1888, from the surviving heirs of Ryerson to plaintiff's grantor, and the recitals of the intentions of the original grantors in 1848, are concerned, I exclude it as in any way binding on the defendant; but the fact remains that there is no evidence offered by defendant to show that the Ryersons, or any one else, ever asserted any claim to the roadbed. The case seems to me to be controlled by the decision of the Court of Appeals in Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33, where Judge Haight discusses the effect of a diagram of this kind, holding that it does not destroy the presumption that the fee to the roadbed was conveyed. See, also, as to the effect of such plans or diagrams, Micklethwait v. Newlay Bridge Co., 23 Eng. Ruling Cases, 165; Varick v. Smith, 9 Paige Ch. 547; White's Bank of Buffalo v. Nichols, 64 N. Y. 67.

Judgment for plaintiff.

. Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and CARR, JJ.

Archibald R. Watson, Corp. Counsel, for appellant.
Hersey Egginton, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Kelley.

---

OAKES MFG. CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

1. MUNICIPAL CORPORATIONS (§ 733*)—TORTS—EXERCISE OF GOVERNMENTAL POWERS—MAINTENANCE OF WATERWORKS.

Where a municipality maintains a public water system, it is acting as a governmental agency, and is therefore not liable for negligence in maintaining the water supply.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1547–1549; Dec. Dig. § 733.*]

2. MUNICIPAL CORPORATIONS (§ 745½*)—TORTS—EXERCISE OF CORPORATE POWERS—MINISTERIAL DUTIES IMPOSED.

Where a ministerial duty is specifically imposed by statute or otherwise upon a municipality, it is liable for the negligence of its officers in the performance of such duty.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1568, 1569; Dec. Dig. § 745½.*]

3. MUNICIPAL CORPORATIONS (§ 747*)—TORTS—LIABILITY—MISTAKE OF JUDGMENT—WATER SUPPLY.

Greater New York Charter (Laws 1897, c. 378) § 1, makes the consolidated city the successor of the constituent municipalities, with all their rights, powers, and duties. Section 517 vests in the city ·of New York. and places on the commissioner of water supply, the rights, powers, and obligations of Long Island City as to the public water supply. Sections 479 and 483 further charge the commissioner of water supply with maintaining the purity of the water supply. Long Island City Charter (Laws 1871, c. 461) tit. 10, provided for water commissioners, with power to establish a water supply, and made it their duty to take all proper measures to preserve the purity and sufficiency of the water. Held that, even if a duty was imposed on the consolidated city, in favor of inhabitants of Long Island ·City, to provide a public supply of water, an error in selecting a source of supply which was subject to contamination by sea water was error in the exercise of a discretion judicial in its nature, and imposed no liability on the consolidated city for damages.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1570–1577; Dec. Dig. § 747.*]

Appeal from Special Term, Queens County.

Action by the Oakes Manufacturing Company against the City of New York. From a judgment for defendant (65 Misc. Rep. 97, 120 N. Y. Supp. 796), plaintiff appeals. Affirmed.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

John D. Kernan, for appellant.
Theodore Connoly (Clarence L. Barber and Edward S. Malone, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes